# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WESTERN STATES ENVELOPE COMPANY,**

    **Plaintiff,**

    **v.**                                                                  Case No. 12-CV-561

**MIDWEST ENVELOPES I, INC. d/b/a**
**MIDWEST ENVELOPES, INC., et al.,**

    **Defendants.**

## DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Western States Envelope Company ("Western States"), alleges that the defendants, Midwest Envelopes I, Inc. ("Midwest I") d/b/a Midwest Envelopes, Inc. ("Midwest Inc."), Marvin Holding Company ("Marvin"), and Lists & Letters, Inc. ("Lists & Letters"), (collectively, "the defendants"), breached its contract with Western States by failing to pay a total of $180,581.94 to Western States for the envelope and label products they ordered and received from Western States. (Am. Compl. ¶ 10, Docket # 13.) The defendants have counterclaimed against Western States for breach of contract. Specifically, the defendants allege that Western States breached an agreement between the parties regarding payment of the balance. (Ans. ¶¶ 1-7, Docket # 16.)

Presently before the Court is Western States' motion for summary judgment on its amended complaint and on the defendants' counterclaim and on two of the defendants' affirmative defenses. (Docket # 21.) For the reasons that follow, Western States' motion for summary judgment is granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc.,Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## UNDISPUTED FACTS

The plaintiff manufactures wholesale and customized envelope and label products (Plaintiff's Proposed Material Facts ("PPMF") ¶ 5 and Defs.' Resp, Dockets # 26, # 31.) The defendants are
-2-

in the business of wholesaling envelope products. (PPMF ¶ 2 and Defs.' Resp.) The products represented in the invoices at issue were ordered from Western States between October 24, 2011 and March 21, 2012. (PPMF ¶ 8 and Defs.' Resp.) Although the defendants maintain Midwest I is a separate entity, the defendants admit that all defendants are located at 480 W. Hintz Road in Wheeling, Illinois. (PPMF ¶ 3 and Defs.' Resp.) All of the invoices for the products at issue were sent by Western States to "Midwest Envelopes, Inc." at the Hintz Road address in Wheeling, Illinois. (PPMF ¶ 11 and Defs.' Resp.) Beginning in the fall of 2011, payments for products ordered from Western States on the Midwest Account fell seriously behind. (PPMF ¶ 14.)

Jose Garza ("Garza") is the president and owner of Midwest Inc., Lists & Letters, and Marvin. (PPMF ¶ 4 and Defs.' Resp.) Since the fall of 2011, and up to the point of filing its lawsuit, Western States gave repeated notice of the delinquency on the Midwest Account to Garza, and attempted to work with Garza to find a suitable way to bring current the past-due balance. (PPMF ¶ 15 and Defs.' Resp.) Throughout the fall and winter of 2011-2012, Western States and Garza discussed several potential payment arrangements orally and in writing. (PPMF ¶ 16 and Defs.' Resp.) In the spring of 2012, Western States proposed a payment arrangement whereby Garza would pay up front for new orders, and pay an additional 25% of the new order against the delinquent balance until the full amount was paid. (PPMF ¶ 17 and Defs.' Resp.) Western States proposed this arrangement based on the fact that Garza's previous nine months of purchases had averaged between $30,000 and $40,000, although the defendants contend the average monthly purchases were closer to $30,000. (PPMF ¶ 18 and Defs.' Resp.) This plan would have paid down the balance on the Midwest account in approximately eighteen months. (PPMF ¶ 18 and Defs.' Resp.)

Certain payments were made against the delinquent amount under this payment plan; however, Garza continued to attempt to convince Western States to allow for a lower percentage to

be paid against the delinquent amount. (PPMF ¶ 19 and Defs.' Resp.) Orders on the Midwest Account declined in April 2012. (PPMF ¶ 20 and Defs.' Resp.) The current combined balance for all open invoices, excluding interest, is $180,581.94. (PPMF ¶ 21 and Defs.' Resp.) The defendants admit Marvin is responsible for the entire amount claimed. (PPMF ¶ 28 and Defs.' Resp.) Although in the defendants' counterclaim they allege Western States was late with the delivery of product ordered by Marvin on numerous occasions and there were often mistakes in the work done by the plaintiff, the defendants agree that Western States cured the non-conformities. (PPMF ¶ 36 and Defs.' Resp.)

Western States received payments against the delinquent amount in the Midwest Account with checks draw on an account for Midwest I and from an account for Lists & Letters. (PPMF ¶¶ 48,49 and Defs.' Resp.)

## DISCUSSION

The parties do not dispute that Wisconsin law governs plaintiff's claims. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir.2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits."). Western States moves for summary judgment, arguing that the defendants breached their contract with Western States by failing to pay a total of $180,581.94. The defendants do not dispute that Marvin owes $180,581.94 on the contract. (PPMF ¶ 28 and Defs.' Resp.) But, the defendants argue there was a separate agreement entered into by Western States and Marvin that serves as an accord and satisfaction of the debt. The defendants further argue that Marvin is the only party responsible for the debt and the parties were not properly served. Finally, the defendants counterclaim against Western States arguing there was an oral agreement between the parties regarding payment of the

balance due that created a new contract and Western States breached this contract. I will address each argument in turn.

   1.   *Accord and Satisfaction*

The defendants argue that as to the defendant Marvin, there has been an accord and satisfaction to its alleged breach of contract. I disagree. An accord and satisfaction is an agreement to discharge an existing disputed claim; it constitutes a defense to an action to enforce the claim. *Batt v. Sweeney*, 2002 WI App 119, ¶ 8, 254 Wis. 2d 721, 727, 647 N.W.2d 868, 871. Like other contracts, an accord and satisfaction requires an offer, an acceptance, and consideration. *Id.* Also, there must be a good faith dispute about the debt in order for there to be an accord and satisfaction. *Flambeau Products Corp. v. Honeywell Information Systems, Inc.*, 116 Wis. 2d 95, 111, 341 N.W.2d 655 (1984); *see also Butler v. Kocisko*, 166 Wis. 2d 212, 215, 479 N.W.2d 208, 210 (Ct. App. 1991) ("An accord and satisfaction requires a bona fide dispute as to the total amount owing . . . .").

In this case, although the defendants argue that there was a dispute over the debt because "there was an ongoing issue with certain returns and improper product supply," (Defs.' Br. at 4, Docket # 29), the defendants admit that Western States cured the non-conformities mentioned in Marvin's counterclaims (PPMF ¶ 36 and Defs.' Resp). Marvin also admits that it was not damaged as a result of the non-conformities mentioned in its counterclaims, other than vaguely stating that there were "some ongoing issues with Marvin's clients as a result of the inability to provide the product." (PPMF ¶ 37 and Defs.' Resp.) There was no bona fide dispute about the debt; as such, there was no accord and satisfaction.

*2. Breach of Contract and Marvin's Counterclaim*

Although this is not an accord and satisfaction case, the discussion does not end there. To repeat, Western States argues the defendants breached the contract between the parties. Defendant Marvin admits that it ordered and took possession of the products at issue in this lawsuit and that it failed to pay $180,581.94 for the products that it accepted (PPMF ¶¶ 29-30, 32 and Defs.' Resp), but the defendants argue there was a subsequent agreement between the parties for payment of the delinquent amount that Western States breached (PPMF ¶ 27 and Defs.' Resp). The defendants further contend that this new agreement significantly changed the terms of the original agreement. According to the defendants, the new agreement allowed Marvin to continue to order product from Western States with two modifications. First, all orders would now be cash on delivery rather than on open account. Second, 25% of the amount of the new orders would be added to the payments to pay down any outstanding balances.

A written contract may be modified by subsequent conduct of the parties. *See Nelsen v. Farmers Mut. Auto. Ins. Co.*, 4 Wis. 2d 36, 56, 90 N.W.2d 123, 134 (1958). The existence of an agreement modifying a previous contract is "established in the same way as any other contract." *Kohlenberg v. Am. Plumbing Supply Co.*, 82 Wis. 2d 384, 393, 263 N.W.2d 496, 500 (1978). While the effect of a modification may be the creation of a new contract, that contract consists of not only the new terms agreed upon but those terms of the original contract which were not modified. *Carnes Co. v. Stone Creek Mechanical, Inc.*, 412 F.3d 845, 853 (7th Cir. 2005) (citing *Estreen v. Bluhm*, 79 Wis. 2d 142, 152, 255 N.W.2d 473, 479 (1977)). However, one party to a contract cannot alter its terms without the assent of the other. *Nelsen*, 4 Wis. 2d at 55, 90 N.W.2d at 133. There must be a meeting of the minds as to the proposed modification. *Id.* at 55–56, 90 N.W.2d at 133-34. In addition, the acts relied on

to establish a modification of a prior contract must be unequivocal. *Id.* Significantly, whether a contract has been modified is a question of fact. *Carnes*, 412 F.3d at 852; *Kohlenberg*, 82 Wis. 2d at 393, 263 N.W.2d at 500 ("The determination that the parties to a written contract have entered into a subsequent oral agreement to rescind or modify the previous contract is a factual determination . . . .").

Here, the evidence indicates that there were correspondences exchanged between Western States and Garza memorializing a verbal agreement between the parties to sell the defendants product on a "cash with order" basis with an additional 25% of the order amount being applied to the past due amount. (Affidavit of William E. Fischer ("Fischer Aff.") ¶ 3, Ex. B at 20, Dockets # 23, # 23-2.) The defendants assert that this was the agreement reached by the parties and that it was operating under this agreement. (Affidavit of Jose Garza ("Garza Aff.") ¶¶ 10-12, Docket # 30.) The plaintiff avers, however, that while it proposed this payment arrangement, there was no new agreement between the parties and Western States did not give up its right to seek immediate payment of the delinquent balance. (Affidavit of Ellen J. Beers ("Beers Aff.") ¶¶ 12, 16, Docket # 24.) Although the plaintiff argues there was no new agreement between the parties, the emails from Western States to Garza refer to the "verbal agreement" Garza had with Western States (Garza Aff., Ex. D at 11) and states that Garza "verbally agreed to these terms," the terms being selling product on a cash with order basis with an additional 25% going towards the past due balance. (Fischer Aff., Ex. B at 20). Drawing all inferences in a light most favorable to the defendants, as the Court must do, Western States has not shown that a rationale trier of fact could not find that the evidence establishes that a subsequent contract modification, or new contract, was formed and that Western States breached it. Thus, summary judgment is not appropriate on either the plaintiff's breach of contract claim or on the defendants' counterclaim.

*3. Liability of the Defendants*

There are three defendants named in this lawsuit: Midwest I, Lists & Letters, and Marvin. The defendants argue Marvin is the only defendant responsible for the debt. Practically speaking, only Midwest I and Marvin are currently active corporations —Lists & Letters has been dissolved. http://www.ilsos.gov/corporatellc/CorporateLlcController (last visited Oct. 7, 2013). Regarding Midwest I, the plaintiff argues Midwest I is liable for the debt because it is a continuation of Midwest Envelopes, Inc., in whose name the delinquent amount in question was incurred. (Pl.'s Br. at 13, Docket # 22.) Specifically, the plaintiff argues Midwest I has admitted it currently does business as Midwest Inc., Garza is the president of both companies, both companies have the same address, and Midwest I has made payments to Western States on the Midwest Account. (Pl.'s Br. at 14.)

It is undisputed that Western States has had a sales relationship with an entity known as "Midwest Envelopes, Inc." since 1988. (PPMF ¶ 6 and Defs.' Resp.) The invoices for the products at issue in this case, as well as the products themselves, were sent to "Midwest Envelopes, Inc." at 480 W. Hintz in Wheeling, Illinois. (PPMF ¶¶ 9-10 and Defs.' Resp; Beers Aff., Ex. A, Dockets # 24, # 24-1.) Midwest Inc. has since been dissolved, and Western States was not informed that Midwest Inc. was no longer in business. (PPMF ¶ 42 and Defs.' Resp.) While Western States argues it was never notified that it was invoicing the wrong entity, the defendants argue Western States was notified in 2009 that Marvin's tax exempt number should be used going forward. (PPMF ¶ 12 and Defs.' Resp.) The defendants provide a copy of a document to Western States dated December 19, 2009 that states Garza purchased Marvin Envelopes and wanted to use its tax exempt number. (Garza Aff. ¶ 7, Ex. C, Dockets # 30, # 30-1.) Western States claims that it has no record of receiving this letter (Beers Aff. ¶ 18) and even if it did receive the letter, it did not request Western States change the name on the Midwest account (Pl.'s Br. at 15).

The general rule in the majority of states, including Wisconsin, is that in a commercial context a corporation that purchases the assets of another corporation does not succeed to the liabilities of the selling corporation. *Gallenberg Equipment, Inc. v. Agromac Intern., Inc.*, 10 F. Supp. 2d 1050, 1053 (E.D. Wis. 1998). There is a well recognized exception to this general rule when the purchaser corporation is a "mere continuation" of the seller corporation. The mere continuation exception requires a common identity of directors, officers, and stockholders, and the existence of only one corporation at the completion of the transfer. *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir.1977). The "key element," though, is the "common identity of the officers, directors and stock holders in the selling and purchasing corporations." *Fish v. Amsted Ind., Inc.*, 126 Wis. 2d 293, 301-02, 376 N.W.2d 820, 824. The test is not whether the business operation continues, but whether there is a continuation of the corporate entity. *Travis*, 565 F.2d at 447.

The defendants argue that the most important factor—common identity of officers, directors, and stock holders—shows that Midwest I is not a continuation of Midwest Inc. because Carl Calandra is the sole shareholder and director of Midwest I (Garza Aff. ¶ 4, Ex. B) while Garza is the president of Midwest Inc. The plaintiff argues that the evidence the defendants present in Garza's affidavit showing that Calandra is the sole shareholder and director of Midwest I cannot create a dispute of material fact because the documents Garza appends to his affidavit regarding the corporate owners and officers of Midwest I are not properly authenticated and are therefore inadmissible. (Pl.'s Reply Br. at 6, Docket # 32.) The plaintiff's argument is well founded regarding all of the documents in Exhibit B except one. The defendants rely on a document from the website of the Illinois Secretary of State showing Calandra as president of Midwest I. The Court will take judicial notice of the Secretary of State of Illinois' website. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003). The

Court is mindful that the Seventh Circuit has urged caution in taking judicial notice of websites. *See Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011) (stating that because the Internet contains "an unlimited supply of information with varying degrees of reliability, permanence, and accessibility, it is especially important for parties to have the opportunity to be heard prior to the taking of judicial notice of websites"). However, the concerns the Seventh Circuit expresses are not present in this case. This is a government website and presumably contains reliable information. More importantly, the plaintiff also relies on this same website to show that Garza was president of Midwest I in 2009. (Fischer Aff. ¶ 7, Ex. F).

Additionally, the defendants present evidence in the form of Garza's affidavit in which he avers that he has never been a shareholder, director, or officer of Midwest I and that a mistaken report was sent to the Illinois Secretary of State. (Garza Aff. ¶ 4). The plaintiff argues Garza provides no evidence "to substantiate his conclusory claim of mistake." (Pl.'s Reply Br. at 5.) But, even without the alleged "mistaken report," Garza does have personal knowledge of whether he has ever been a shareholder, director, or officer of Midwest I. Thus, though weak, this creates an issue of material fact as to the continuation of Midwest Inc.

The Court acknowledges the remainder of the undisputed evidence tends to favor a finding that Midwest I is a continuation of Midwest Inc. As previously stated, in its amended complaint, the plaintiff alleged that Midwest I is doing business as Midwest Inc. (Am. Compl. ¶ 2.) The defendants admitted this allegation in its answer. (Ans. ¶ 2.) Although the defendants now deny this, the answer admitting that Midwest I does business as Midwest Inc. constitutes a binding judicial admission. *See Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005). The defendants have not moved to amend their answer.

-10-

Further, it is difficult to believe that Garza has no relationship with Midwest I when he is authorized to write checks on its behalf. Even putting aside his conclusory and unsupported statement that the checks written from Midwest I's account served as loans to other companies (Garza Aff. ¶ 5), it still begs the question of why he is authorized to write checks against Midwest I's account. Garza clearly has authority within that corporation even if he is not a shareholder, director, or officer. Even so, the defendants have created a dispute, albeit thin, of material fact with Garza's affidavit to preclude summary judgment on the issue of Midwest I's liability.

Regarding Lists & Letters, it is undisputed that Lists & Letters is owned by Garza and Western States formerly had a separate account for Lists & Letters but that account was closed after Garza purchased Midwest Inc. (PPMF ¶ 52 and Defs.' Resp; Affidavit of Christine O. Hansen ¶ 4, Docket # 25.) However, until January 23, 2012, Western States received payments against the delinquent amount in the Midwest Account with checks drawn on an account for "Lists & Letters, Inc." (PPMF ¶ 48 and Defs.' Resp; Beers Aff., Ex. H.) Other than arguing that Marvin is the only party responsible for the debt, the defendants do not address Western States' argument that Lists & Letters is also responsible for the debt. Thus, the defendants have admitted Lists & Letters' liability for the debt. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (finding that a failure to oppose an argument operates as a waiver).

   4.   *Service of Process*

Finally, the plaintiff moves for summary judgment on the defendants' affirmative defense that the defendants were not properly served with process. The defendants argue Jay Shapiro, who accepted the summons and complaint, was an employee of Marvin and not authorized to accept service for any of the defendants. (Defs.' Br. at 7; Garza Aff. ¶ 15.) Fed. R. Civ. P. 4(h) sets out the rules governing service of process on corporation, allowing service to be accomplished:

-11-

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant.

In turn, Rule 4(e)(1) provides that service can be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Under Wisconsin law, service on corporations may be accomplished:

> (a) By personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.

Wis. Stat. § 801.11(5). The plaintiff has submitted an affidavit of the process server who indicated that Shapiro was an authorized person to accept service of process on behalf of the corporations. (Docket # 3.) Despite Garza's averment to the contrary, the uncontradicted evidence shows Shapiro appeared to be in charge of the office. As such, this affirmative defense fails.

## CONCLUSION

Western States argues that the defendants breached the contract between the parties. The defendants respond that there was a subsequent agreement between the parties that Western States breached. Drawing all inferences in a light most favorable to the defendants, Western States has not shown that a rationale trier of fact could not find that the evidence establishes that a subsequent contract modification, or new contract, was formed and that Western States breached it. Thus, summary judgment is not appropriate on either the plaintiff's breach of contract claim or on the

-12-

defendants' counterclaim. Similarly, there are disputes of material fact as to the liability of Midwest I for the debt and as to whether Midwest I is a continuation of Midwest Inc.

While the Court finds that there are disputes of material fact as to Western States' breach of contract claim and Marvin's breach of contract counterclaim that precludes summary judgment, the Court finds that the defendants' affirmative defenses of accord and satisfaction and improper service fail as a matter of law.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's Motion for Summary Judgment (Docket # 21) is **GRANTED IN PART AND DENIED IN PART**. The plaintiff's motion for summary judgment as to plaintiff's breach of contract claim and the defendants' breach of contract counterclaim is **DENIED**. The plaintiff's motion for summary judgment dismissing the defendants' affirmative defenses of accord and satisfaction and improper service is **GRANTED**.

Dated at Milwaukee, Wisconsin this 8th day of October, 2013.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge